Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| WILLIAM THOMAS GORMAN, | ) Case No. 16-bk-587 |
| | ) |
| Debtor. | ) Chapter 7 |
| | ) |
| WILLIAM THOMAS GORMAN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No. 17-ap-09 |
| | ) |
| NORTHERN TRUST COMPANY, | ) |
| WELLS FARGO BANK, NA, GARY | ) |
| DALLAS SEVELAND, JOHN MACK, | ) |
| and JOHN DOE 1-100, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Wells Fargo Bank, N.A. ("Wells Fargo") seeks the dismissal of the claims asserted against it in this proceeding by William Gorman (the "Debtor") and Martin Sheehan, Trustee of the Debtor's Chapter 7 bankruptcy estate.[1] In that regard, Wells Fargo asserts that the one enumerated count, for conversion of an instrument, and perceived claims for common law conversion and breach of a fiduciary duty must be dismissed. Specifically, Wells Fargo asserts that the applicable

---

[1] The complaint asserts that William Gorman is the sole plaintiff in this case. However, the claims set forth in the complaint are property of the estate. Furthermore, the court entered an order in the Debtor's bankruptcy case authorizing the Trustee to hire Robert Greer to represent him in the prosecution of these claims. Thus, it is clear that the Trustee should be a named plaintiff in this case. The Debtor himself may possess an exemptible interest in some portion of the claims, but the Debtor did not assert any interest in these claims in connection with his bankruptcy schedules.

1

statute of limitations bars the Debtor's action for conversion of an instrument, the Debtor did not receive certain instruments such that claims for conversion of those instruments fail, the Debtor otherwise fails to state a claim at common law for conversion, and Wells Fargo did not owe a fiduciary duty to the Debtor. In response, the Plaintiffs assert that Wells Fargo improperly relied upon West Virginia law when New Jersey law governs and that the statute of limitations defense fails because 11 U.S.C. § 108(a) preserves claims for up to two years after the date the Debtor filed for bankruptcy. For the reasons stated herein, the court will grant Wells Fargo's motion to dismiss and dismiss, without prejudice, Count III of the Plaintiffs' complaint as it pertains to Wells Fargo.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b) (incorporating Rule 12(b)(6)). To survive a Rule 12(b)(6) motion, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bonds v. Leavitt*, 629 F.3d 369, 385 (4th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). As the Fourth Circuit has explained, the plausibility standard requires a plaintiff "to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility' of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Finally, when courts evaluate a motion to dismiss, they are to (1) construe the complaint in a light favorable to the plaintiff, (2) take factual allegations as true, and (3) draw all reasonable inferences in favor of the plaintiff. 5C Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1357 (3d. ed. 2012) (collecting thousands of cases). The court's role in ruling on a motion to dismiss is not to weigh the evidence, but to analyze the legal feasibility of the complaint. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998). In fact, the court is "limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus Inc.,* 637 F.3d 435, 448 (4th Cir. 2011)).

Moreover, in adjudicating a motion to dismiss for failure to state a claim under Rule 12(b)(6), courts are to look to the sufficiency of the complaint such that they "generally cannot

reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2004). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss . . . ." *Id*.

## II. BACKGROUND

The Plaintiffs' complaint asserts the following allegations depicting an extensive scheme implemented by several of the named co-defendants to defraud the Debtor of essentially all of his assets over the course of seven years. For purposes of adjudicating the motion to dismiss, all assertions are presumed to be true. The Debtor is a 90-year-old man suffering from Asperger's syndrome and hearing loss. As such, he is dependent upon the assistance of others to complete his daily tasks. The Debtor has eight adult children: Theresia Ingrid Conway, William Martin Gorman, Karl Gerhardt Gorman, Otto Earnest Gorman, Franz Gorman, Erika Gorman Dolente, Ursula Gorman Choski, and Erik Gorman. After the Debtor's wife died in 2004, the Debtor moved in with Erik Gorman, Gary Seveland, and John Mack. Erik Gorman also served as attorney-in-fact for the Debtor, acquiring that responsibility when the Debtor granted him power of attorney on September 18, 2013. Seveland and Mack were intimate partners of Erik Gorman while he was alive.

While the Debtor lived with Seveland, Mack, and Erik Gorman, they isolated him from his other children. To further the Debtor's isolation, Erik Gorman informed his siblings that the Debtor was already dead and buried. During that time, numerous lines of credit were opened in the Debtor's name without his authorization and all of his possessions were sold.[2] Additionally, Seveland and Mack physically and mentally abused the Debtor by starving him, locking him in a bedroom without lights, denying him contact with the outside world, and falsely informing the Debtor that he was wanted by the police. However, the Debtor continued to reside with Seveland and Mack until August 22, 2006. On that date, Seveland and Mack moved the Debtor into Seashore Gardens Living Center in Galloway Township, New Jersey.[3] On June 8, 2007, Erik Gorman died.

---

[2] The Plaintiffs fail to allege who opened the lines of credit and sold the Debtor's possessions or what became of the proceeds of the sales.

[3] In 2006 Erik Gorman was suffering from brain cancer. It is unclear whether he still resided with Seveland and Mack and whether he was involved in moving his father to the nursing home.

Although Seveland and Mack no longer lived with the Debtor, and Erik Gorman's death terminated their potential access to the Debtor's power of attorney, their fraudulent scheme was underway. On November 23, 2006, Seveland forged a durable power of attorney over the Debtor, witnessed by Mack, and posthumously notarized by Erik Gorman. Beginning on November 5, 2007, Seveland and Mack intercepted 71 checks intended for the Debtor which the complaint refers to as Rexam pension settlement checks ("settlement checks"). Seveland and Mack forged the Debtor's signature and cashed each of those checks through the Debtor's Wachovia bank account.[4] To further their scheme, Seveland and Mack contacted Northern Trust Company, a co-defendant and the party responsible for disbursing the Debtor's settlement checks, and fraudulently instructed it to mail the settlement checks directly to them; first to their new residence in North Carolina in 2010, then to their next residence in Florida in 2011 and 2012. Seveland and Mack fraudulently endorsed checks for a total of $7,418.91.

In addition to intercepting settlement checks intended for the Debtor, beginning on September 1, 2006, Seveland and Mack also withdrew the Debtor's pension funds that were directly deposited into his account with Wachovia Bank. Seveland and Mack withdrew a total of $82,008 in pension funds without the Debtor's authorization.

In March or April of 2013, Franz and Leslie Gorman discovered that the Debtor was still alive and residing at the Seashore Gardens Living Center. On May 1, 2013, the Debtor moved out of the Seashore Gardens Living Center and moved in with Franz and Leslie Gorman in Bruceton Mills, West Virginia. On that same date, Seveland and Mack ceased their fraudulent scheme of cashing the Debtor's settlement checks and withdrawing pension funds from his account.

On June 6, 2016, the Debtor filed a petition seeking bankruptcy relief with this court. The Trustee of the Debtor's bankruptcy estate filed an application to employ the Greer Law Offices as counsel to pursue claims against the defendants, which the Plaintiffs filed on March 7, 2017.

### III.   DISCUSSION

Wells Fargo asserts that the court must dismiss the count raised against it by the Plaintiffs because the applicable statute of limitations bars any claim for conversion of an instrument, negligence, or common law conversion. Additionally, Wells Fargo argues that many of the checks negotiated by Seveland and Mack were never delivered to the Debtor, thus a cause of action for

---

[4] Wachovia was later absorbed by Wells Fargo.

conversion of an instrument fails with regard to those checks.  Finally, Wells Fargo asserts that it did not owe a fiduciary duty to the Plaintiffs and therefore cannot be found liable for any breach of a fiduciary duty.  In response, the Plaintiffs argue that New Jersey law governs and that the statute of limitations did not run before the Debtor sought bankruptcy protection.  They did not address Wells Fargo's arguments regarding fiduciary duties or check delivery.  In reply, Wells Fargo asserts that the failure to respond to an argument contained in a motion to dismiss amounts to a concession of that argument.

i.    *Failure to respond to arguments contained in a motion to dismiss*

As a preliminary matter, Wells Fargo asserts that at least a partial dismissal is proper because the Plaintiffs failed to respond to certain arguments contained in their motion to dismiss.  It argues that "the failure to address an argument in an opposition brief to a motion to dismiss constitutes abandonment of a claim."  However, federal courts have "an obligation to review motions to ensure that dismissal is proper." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014).  Thus, courts "may not automatically treat a failure to respond to a 12(b)(6) motion as a procedural default." *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004).  Furthermore, "[t]he Federal Rules of Civil Procedure . . . do not require a party to file a response in opposition to a motion to dismiss." *Stevenson*, 743 F.3d at 416 n.3.  Therefore, the court will evaluate each portion of Wells Fargo's motion to dismiss on its merits, despite the Plaintiffs' failure to adequately respond to every argument.

ii.   *Choice of law*

The parties dispute what law governs the Plaintiffs' causes of action.  The Plaintiffs assert that New Jersey law applies because the Debtor was residing in New Jersey at all times pertinent to the dispute between the Plaintiffs and Wells Fargo.  Wells Fargo asserts that West Virginia law applies because it is unclear whether West Virginia, New Jersey, Florida, North Carolina, or Pennsylvania law applies; thus a more complicated choice of law analysis is necessary to determine what law applies, and under that analysis, West Virginia law controls.

Federal courts sitting in diversity apply the choice-of-law rules of the state in which the trial court sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941).  The Fourth Circuit concluded that that same principal applies where a federal court addresses state law claims under its pendent jurisdiction. *Compliance Marine, Inc. v. Campbell (In re Merritt Dredging Co.)*, 839 F.2d 203, 205 (4th Cir. 1988).  Furthermore, "in the absence of a compelling

5

federal interest which dictates otherwise, the *Klaxon* rule should prevail where a federal bankruptcy court seeks to determine the extent of a debtor's property interest." *Id*. at 206. Thus, absent a compelling federal interest which dictates otherwise, bankruptcy courts apply the choice-of-law rules of the state in which they sit whether adjudicating bankruptcy-related disputes or disputes over a debtor's interest in property. This court, sitting in West Virginia, will therefore determine the appropriate law based upon an analysis of West Virginia's choice of law rules.

When conducting a choice-of-law analysis, West Virginia courts distinguish between tort claims and contract claims. *Kenney v. Independent Order of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014). "Choice of law in contracts cases is governed by the rule of *lex loci contractus* [the law of the place where the contract is made], and choice of law in torts is generally governed by the rule of *lex loci delicti* [the law of the place where the tort was committed]." *Id*. (internal citations omitted). Although West Virginia courts value the "consistency, predictability, and ease of application provided by" applying the law of the locus of the injury, they have also looked to "the standards set forth in the [Restatement (Second) of Conflicts] to resolve particularly thorny conflict problems." *Paul v. National Life*, 352 S.E.2d 550, 555 (W. Va. 1986); *Oakes v. Oxygen Therapy Services*, 363 S.E.2d 130, 131 (W. Va. 1987). Specifically, the Supreme Court of Appeals looks to the *Restatement* to determine applicable law when the nature of the injury is esoteric rather than tangible. *M&S Partners v. Scottsdale Ins. Co.*, No. 2:04-1221, 2006 WL 995136, at *3 (S.D.W. Va. April 11, 2006) *aff'd*, 277 F.App'x 286 (4th Cir. 2008).

In this case, the Plaintiffs assert that the choice of law determination is simple: the Debtor lived in New Jersey for the entire time that Mack and Seveland intercepted his settlement checks and withdrew his pension deposits, thus the harm occurred in New Jersey and its laws apply. Wells Fargo argues that this is one of those cases involving particularly thorny conflict problems where the harm is esoteric, such that the rule of *lex loci delicti* falls short and the court should apply the more flexible analysis set forth in the *Restatement (second) of Conflicts*.[5] Specifically, it asserts

---

[5] Restatement (Second) of Conflict of Laws § 145 provides:
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principle stated in § 6.
(2) Contacts being taken into account in applying the principle of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing injury occurred,

6

that although the Debtor resided in New Jersey during the relevant period of time, Mack and Seveland lived in four different states and committed their tortious acts in whatever state they were then residing. Furthermore, it asserts that Wells Fargo is a resident of South Dakota that does business all over the country. Therefore, Wells Fargo asserts that the court should apply the Restatement analysis and conclude that West Virginia law governs.

A survey of cases in which West Virginia courts have applied the Restatement analysis over the *lex loci delicti* test, leads this court to believe that the West Virginia Supreme Court of Appeals would apply the *lex loci delicti* analysis on the facts here. In instances where West Virginia courts have looked to the Restatement analysis, the facts and interdependence on laws from multiple jurisdictions have been far thornier than the facts here. *See Oakes*, 363 S.E.2d 130 (applying the Restatement in the plaintiff's suit against his former employer for breach of contract and retaliatory discharge despite plaintiff's argument for the application of West Virginia law because he was informed of his termination while in West Virginia, whereas the underlying claim related to a contract for employment in Maryland and was based upon a theory that he was fired for applying for worker's compensation under Maryland law); *Lee v. Saliga*, 373 S.E.2d 345 (looking to the Restatement to determine choice of law issues regarding insurance coverage when it was clear that a contract, though signed in one state, was to be performed in multiple states); *M&S Partners*, 2006 WL 95136 (using the Restatement regarding to a choice of law question for violations of the West Virginia Unfair Trade Practices Act when the violations related closely to a contract entered outside of West Virginia). In this case, however, it is clear that the harm, e.g. the

---

(c) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and
(d) the place where the relationship, if any, between the parties, is centered.

Section 6, referenced in § 145, of the Restatement lists factors important for consideration when analyzing choice of law:
(a) The needs of the interstate and international systems;
(b) The relevant policies of the forum;
(c) The relevant policies of other interested states and relative interest of those states in the determination of the particular issue;
(d) The protection of justified expectations;
(e) The basic policies underlying the particular field of law;
(f) Certainty, predictability, and uniformity of results; and
(g) Ease in the determination and application of the law to be applied.

7

loss of funds, occurred in New Jersey and that injury is sufficiently concrete so as to avoid a more complicated analysis. Thus, New Jersey law controls the Plaintiffs claims asserted against Wells Fargo.[6]

### iii.   *Statute of limitations*

Wells Fargo asserts that dismissal of the Plaintiffs complaint is proper as the applicable statute of limitations bars the Plaintiffs' action. Specifically, Wells Fargo asserts that conversion of an instrument has a three-year limitation period which ran, at the latest, on June 1, 2016; however the complaint was not filed until March 7, 2017. Wells Fargo further asserts that any other claims asserted by the Plaintiffs are also barred by the applicable statute of limitations.[7] In response, the Plaintiffs assert that the statute of limitations has not run because the discovery rule applies and because the Debtor filed bankruptcy before the statute of limitations ran, thus tolling the statute of limitations for up to two years from the filing of the Debtor's bankruptcy petition.

Applying New Jersey law, the statute of limitations for conversion of an instrument is three years. N.J.S.A § 12A:3-118(g). Moreover, "the cause of action against a bank in a conversion action with respect to negotiable instruments accrues at the time of conversion, and that the time of the discovery rule does not apply under the UCC provision." *New Jersey Lawyers' Fund for Client Protection v. Pace*, 863 A.2d 402, 408 (N.J. Super. 2005) *aff'd*, 902 A.2d 661 (N.J. 2006).

Mack and Seveland cashed the Debtor's checks through the Debtor's Wachovia bank account from November 5, 2007 until May 1, 2013. The Debtor filed his bankruptcy petition on June 6, 2016, and the Plaintiffs filed their complaint in this adversary proceeding on March 7, 2017. Although the Plaintiffs assert that the discovery rule applies and that the Debtor's

---

[6] Notably, New Jersey and West Virginia have both adopted the Uniform Commercial Code, thus the statute of limitations for conversion of an instrument is three years in both jurisdictions. *Compare* W. Va. Code § 46-3-118(g) and N.J.S.A. § 12A:3-118(g). Furthermore, both West Virginia and New Jersey courts have held that the discovery rule does not apply to conversion of an instrument. *See Copier Word Processing Supply Inc. v. WesBanco Bank, Inc.*, 640 S.E.2d. 102, 110 (W. Va. 2006) (applying West Virginia law); *see also Willier v. Hurt*, No. 5:06-CV-547, 2007 WL 4613033, at *6 (S.D.W. Va. Dec. 31, 2007) (applying West Virginia law); *New Jersey Lawyers' Fund for Client Protection v. Pace*, 863 A.2d 402, 408 (N.J. Super. 2005) *aff'd*, 902 A.2d 661 (N.J. 2006) (applying New Jersey law). Thus, the court's analysis would be the same under both West Virginia and New Jersey law.

[7] The court withholds judgment on whether the statute of limitations bars any action for breach of fiduciary duty or common law conversion because those claims were not sufficiently pleaded by the Plaintiffs.

bankruptcy petition tolled the statute of limitations before it expired, the Plaintiffs are mistaken on several grounds. First, as *Pace* set forth, the discovery rule generally does not apply for an action for conversion of an instrument. In *Pace*, the court suggests that it may apply in instances where the bank fraudulently conceals the conversion, but the Plaintiffs did not plead such an allegation in this proceeding. Second, insofar as the last day Mack and Seveland cashed any checks was on June 1, 2013, and the discovery rule does not apply, the statute of limitations ran, at the latest, on June 1, 2016, five days before the Debtor filed his bankruptcy petition. Thus, filing bankruptcy had no effect on the claims. Therefore, under New Jersey law, the statute of limitations bars all claims against Wells Fargo for conversion of an instrument.[8]

iv.     *Fiduciary duty*

The Plaintiffs also allege that Wachovia breached a fiduciary duty owed to the Debtor by allowing Seveland and Mack to withdraw pension payments that were directly deposited into his account. Wells Fargo seeks dismissal of this claim because it asserts that it did not owe any fiduciary duty to the Debtor and no such duty was alleged.

Wells Fargo is correct in its assertions. The Plaintiffs fail to plead any basis upon which to establish a fiduciary relationship between the Debtor and Wells Fargo.[9] Therefore, any claim stemming from the breach of a fiduciary duty raised by the Plaintiffs fails.

## IV. CONVERSION

Wells Fargo also seeks dismissal of any claims raised against them for common law conversion. However, no such claim is pleaded. Therefore, no analysis of Wells Fargo's argument in that regard is necessary.

---

[8] Because the statute of limitations bars all claims for conversion of an instrument, there is no need to address Wells Fargo's argument regarding the Debtor's failure to receive the instruments before they were converted.

[9] Furthermore, under New Jersey law, there is no presumed fiduciary relationship between a bank and its customer. *Globe Motor Car Co. v. First Fidelity Bank, N.A.*, 641 A.2d 1136 (N. J. Super. Ct. Law Div.), *aff'd*, 677 A.2d 794 (App. Div.), *cert. denied*, 686 A.2d 764 (N.J. 1996). Rather, there is a general presumption that "the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." *United Jersey Bank v. Kensey*, 704 A.2d 38, 45 (N.J. App. 1997). Thus, a presumption exists that a bank and its customers enter into a simple debtor-creditor relationship and no fiduciary duty arises absent some specific establishment of trust. *Globe Motor Car Co.*, 641 A.2d at 1139.

9

## V. CONCLUSION

Based upon the foregoing, the court finds it appropriate to grant Wells Fargo's motion and dismiss the Plaintiffs' claims against it. Consistent with Fed. R. Civ. P. 58, made applicable here by Fed. R. Bankr. P. 7058, the court will enter a separate order granting Wells Fargo's motion to dismiss.